# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| LOUIS SHEFFIELD, Individually and on Behalf of all Others Similarly Situated, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION H- 19-1030 |
| STEWART BUILDERS, INC., | § § | |
| *Defendant*. | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are (1) a motion for attorneys' fees and costs filed by plaintiff Louis Sheffield on behalf of himself and other members of this Fair Labor Standards Act ("FLSA") collective action (Dkt. 48); and (2) an oral motion to approve the settlement made, in an abundance of caution, during a hearing on March 10, 2021. Sheffield and defendant Stewart Builders, Inc. ("Stewart") have reached an agreement regarding the damages in this case, but they seek the court's assistance in determining reasonable attorneys' fees and costs. *Id.* The court found during the hearing that the settlement was a "fair and reasonable [resolution] of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United* States, 679 F.2d 1350, 1352–55 (11th Cir. 1982); *see Bodle v. TXL Morg. Corp.*, 788 F.3d 159, 164 (5th Cir. 2015) (citing *Lynn's Food*). The motion for approval of the settlement is therefore GRANTED. With regard to the motion for attorneys' fees, the court has considered the motion, response, reply, Sheffield's counsel's affidavit, supplemental authority, the arguments made during the March 10 hearing, and the applicable law, and the court has determined that Sheffield's motion should be GRANTED IN PART.

## I. Background

Louis Sheffield filed a claim this FLSA overtime collective action lawsuit against Stewart on behalf of himself and others who work or worked as pump operators for Stewart.  Dkt. 1. Sheffield contends that Stewart's pump operators were misclassified as exempt.  *Id.*  Sheffield filed an eleven-page complaint on March 20, 2019.  Dkt. 1.  On March 16, 2019, Sheffield filed a nine-page motion for conditional certification with a five-page declaration and an eleven-page opposed motion for approval and distribution of notice and for disclosure of contact information with an eight-page declaration and other attachments.  Dkts. 9, 10.  He timely filed replies after Stewart filed responses.  Dkts. 13, 14.  On July 10, 2019, the court denied the motions because Sheffield had not made a sufficient factual showing that there were similarly situated individuals who wanted to opt in to the lawsuit.  Dkt. 15.  The seven-page order denying the motion contained reasoning because, given the rulings of other courts in this same district on motions for conditional certification, Sheffield had a colorable argument for conditional certification.  *See id.* at 5 n.1.  On August 12, 2019, Sheffield filed two consents to join the collective action.  Dkt. 18.  On August 15, 2019, he again filed a motion to certify the class and a motion for approval and distribution of notice, which were similar to the original motions but provided more support for the assertion that others would like to join the case.  See Dkts. 21, 22.  Sheffield also filed replies after Stewart responded.  Dkts. 29, 30.  The court granted the motion to certify the class on October 30, 2019, and the parties agreed on the documents to send to class members shortly thereafter.  Dkts. 31, 32. After several individuals opted into the collective action, Sheffield filed a notice of acceptance of third offer of judgment.  Dkt. 46.  He also filed an opposed motion for attorneys' fees.  Dkt. 48.

In his motion for attorneys' fees, Sheffield notes that he accepted Stewart's offer of judgment of $32,000 plus reasonable fees on July 23, 2020.  Dkt. 48.  The plaintiff filed the motion

pursuant to Federal Rule of Civil Procedure 54(d) and seeks reasonable fees pursuant to 29 U.S.C. § 216(b). *Id.* It seeks $43,789, which is $43,284 is fees and $495 in costs. *Id.* The motion for attorneys' fees is now ripe for disposition.

## II. LEGAL STANDARD

The FLSA provides for the imposition of costs and attorneys' fees in favor of prevailing parties. 29 U.S.C. § 216(b). In evaluating a fee award, the Court determines the amount of attorneys' fees to which a prevailing party is entitled through a two-step process. *Hopwood v. Texas*, 236 F.3d 256, 277 (5th Cir. 2000). The court first calculates the "lodestar" by multiplying the reasonable number of hours spent on the case by the reasonable hourly rate. *Id.* A reasonable rate for attorneys' fees awarded under Section 1692k(a)(3) is the prevailing market rate for attorneys of comparable experience employed in cases of similar complexity. *See Cope v. Duggins*, 203 F.Supp.2d 650, 655 (E.D. La. 2002) (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)). The rates are based on what is customary for similar work in the local forum are presumptively reasonable, though in limited circumstances, such as if there is "abundant and uncontradicted evidence [of] the necessity [of] turning to out-of-district counsel," then "the co-counsel's 'home' rates should be considered as a starting point for calculating the lodestar amount." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 382, 387 (5th Cir. 2011). FLSA plaintiffs seeking attorneys' fees "are charged with the burden of showing the reasonableness of the hours billed." *Saizan v. Delta Concrete Products Co.*, 448 F.3d 795, 799 (5th Cir. 2006); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (stating that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates"). Plaintiffs' counsel, however, "is not required to record in great detail how each minute of

his time was expended," but should at a minimum "at least identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12.

At the second step, the court considers whether the lodestar amount should be adjusted upwards or downwards based on the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), although the most critical of these factors is the overall degree of success achieved. *Hensley*, 461 U.S. at 434. The Supreme Court has also instructed that the court should engage in a "strong presumption" that the lodestar figure, without adjustment, is the reasonable fee award. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

## III. ANALYSIS

Sheffield's counsel has provided a declaration that details the rates and hours requested and why they are reasonable. Dkt. 48-1. Stewart objects that neither the rates nor the hours expended are reasonable. Dkt. 51.

### A.    Rates

Sheffield seeks the following rates for the following attorneys:  Josh Sanford (lead counsel): $500; Vanessa Kinney: $350; Meredith McEntire: $350; Rebecca Matlock: $225; Steve Rauls: $300; and Anna Stiritz: $400. *Id.*  Additionally, he seeks reimbursement at $125 per hour for a paralegal and $90 per hour for an unnamed law clerk. *Id.*  Sanford asserts in his declaration that these rates are justified by each person's skills and experience, and he notes that he has gained his knowledge of hourly rates charged through his practice in Houston, Texas and through other awards of fees in the Houston, Texas area, as well as the State Bar of Texas Department of Research and Analysis 2015 Hourly Fact Sheet. *Id.*  He additionally filed a supplement that outlines fees that have been awarded to employment lawyers in Texas. Dkt. 58, Ex. A-1.

4

Stewart argues that none of these rates is reasonable.  Dkt. 51.  Stewart contends that Sheffield cannot have possibly met its burden of establishing the reasonableness of the unnamed law clerk's rate because Sheffield did not provide any information about this person or persons. *Id.* (citing *Perdue v. Kenny A.*, 559 U.S. 542, 552, 130 S. Ct. 1662 (2010)).  Stewart argues that McEntire's rate is unjustified by Sanford's "scant description of her qualifications and experience," and that she has only been licensed in Texas since September 2017 and only recently started litigating FLSA matters.  *Id.*  Stewart argues that Sanford's $500 rate is unjustified because he is not board certified and there is no indication that any client has ever paid him $500 an hour. *Id.*  Stewart argues that Stiritz's rate of $400 an hour is unsubstantiated as she has largely focused on non-employment-law cases in the past.  *Id.*  It similarly argues that Kinney's and Rauls's rates are not sufficiently substantiated.  *Id.*  Stewart notes that the median hourly rate for labor and employment lawyers in the Houston area is $285 per hour, which is below the rate of most of the attorneys who billed time in this case.  *Id.*  Additionally, it asserts that McEntire is based in San Antonio, which has a median rate of $258, and that Arkansas courts have set Sanford's rate at $275.  *Id.*  Stewart further points out that one Arkansas federal court awarded only $1 to Sanford's firm.  *Id.* (citing *Vines v. Welspun Pipes, Inc.*, No. 18-CV-00509-BRW, 2020 WL 3062384 (E.D. Ark. June 9, 2020)).

In reply, Sheffield notes that several Texas courts have approved his $500 per hour rate and that the references to Arkansas rates should be disregarded because courts should examine rates for cases in the area where the case it litigated, not where the attorneys are physically located. Dkt. 53.  With regard to the other attorneys' rates, Sheffield states that Sanford's affidavit provides sufficient information regarding their experience to support their rates.  *Id.*  He notes that even though McEntire has only been licensed in Texas for three years, she has been practicing in other

areas of the country for over ten years.  *Id.*  Additionally, Kinney, Rauls, and Matlock have worked for Sanford for eleven years, seven years, and five years, respectively, and have been working almost exclusively on FLSA cases the entire time.  *Id.*  And Stiritz has been focused on FLSA exclusively for the past eight years.  *Id.*  He points out that the attorneys on this case have over thirty years of combined experience in FLSA litigation.  *Id.*  As to the law clerk and staff, Sheffield asserts that there is no need to provide biographical information on these individuals because their positions are commonly understood and the rates are in line with what has been awarded for this type of work in the Southern District of Texas.  *Id.*  Sheffield also notes that the law clerk performed the majority of the labor-intensive work in this case, which kept the rates overall lower. *Id.*

Recently, Magistrate Judge Bemporad in the Western District of Texas considered whether Sanford's request for $500 per hour was reasonable and determined that it was not.[1]  *See Furlow v. Bullzeye Oilfield Servs., LLC*, No.SA-15-CV-1156-DAE, 2019 WL 1313470, at *4 (W.D. Tex. Jan. 3, 2019).  The court noted that the requested rate was almost double the median rate for San Antonio and neither the size of his firm, nor the nature of this litigation, nor Sanford's specific credentials justified the $500 rate.  *Id.*  It noted that his firm is not small, but it is "not large enough to justify the type of upward adjustment that a large law firm may demand from its client."  *Id.*  It found the case was not "of such complexity that an upward adjustment of nearly double the median rate for labor an employment attorneys in the San Antonio area" was warranted, and that Sanford has "substantial experience that is relevant to [the] case, and that some upward adjustment . . . may

---

[1] The district court adopted the Magistrate Judge's recommendation on January 29, 2019.  *Furlow v. Bullzeye Oilfield Servs., LLC*, No. 5:15-CV-1156-DAE, 2019 WL 1313454 (W.D. Tex. Jan. 29, 2019).

be justified" but not "nearly double the median rate."  *Id.*  The court set Sanford's rate at $325, which was $67 more than the $258 median in San Antonio.  *Id.*  The court set the rates for Kinny, Stirlitz, and two other attorneys that were on the case in San Antonio at the median rate from that area.  *Id.*  It set the rate for Matlock, who had only been licensed for three years at the time, at $200, which was the median rate for attorneys licensed for zero to six years in San Antonio.  *Id.*

Several months later, Magistrate Judge Chestney, who is in the same division of the Western District of Texas as Magistrate Judge Bemporad, also considered whether similar rates requested by Sanford and attorneys at his firm were reasonable in a different FLSA case.  *See West v. Zedric's LLC*, No. SA-10-CV-00556-FB, 2019 WL 6522828, at *3–4 (W.D. Tex. Dec. 3, 2019). The court noted that Sanford had provided citation to one case in the Western District in which he was awarded $500 an hour; the court distinguished that case because the opposing side did not object to Sanford's rate.  *Id.* at *4 (discussing *Moore v. Performance Pressure Pumping Servs., LLC*, No. 5:15-cv-432-RC (W.D. Tex. Aug. 14, 2019)).

Two months after Magistrate Judge Chesney issued her ruling in *West*, a magistrate judge in the Midland-Odessa division of the Western District of Texas, rather than analyzing whether the rates of the individual attorneys in Sanford's firm were reasonable, considered the average rate for the attorneys in Sanford's firm, which was $315 per hour in that case after averaging the rates ranging from $90 to $500 per hour.  *Beck v. Howell Oilfield Enterprises, LLC*, No. MO:18-CV-189-DC-RCG, 2020 WL 7481968, at *5 (W.D. Tex. Feb. 18, 2020).  The court determined that this was a "reasonable rate for an attorney practicing in the field of employment law with comparable experience to Mr. Sanford."  *Id.* (citing cases approving rates of $425 and $400 for labor and employment attorneys).

First, the court will apply the rates in Houston in this case, as the circumstances in which the rates of a different locale would apply are not applicable here.  The court does not find the Arkansas cases cited by Stewart, which were in a completely different geographic area, persuasive.[2]  Second, the court agrees with the courts in the San Antonio Division of the Western District of Texas that this type of case does not merit the rates Sheffield is requesting for the attorneys in Sanford's firm.  The court finds that it is more appropriate to consider the reasonableness of each lawyer's fee than the average of all fees.  In Houston, the median hourly rate for labor and employment lawyers is $285 per hour.  Dkt. 51, Ex. D (State Bar of Tex. Dept. of Research & Analysis, 2015 Hourly Fact Sheet (Aug. 2016)).  The median rates in Houston, not taking into account practice area, per years of experience are (1) $213 for two years or less; (2) $250 for three to six years; (3) $265 for seven to ten years; (4) $257 for eleven to fifteen years; and (5) $300 for sixteen to over twenty-five years.  *Id.*  The median rates for firm size, not taking into account practice area, in Houston are (1) $250 for firms up to ten attorneys; (2) $270 for firms having eleven to twenty-four attorneys; (3) $250 for firms with twenty-five to forty attorneys; (4) varying rates for firms with more than forty attorneys but less than 400, but not more than $354; and (5) $450 for firms having more than 400 attorneys.  *Id.*  In the survey, 5.1% of all the attorneys

---

[2] The Arkansas case in which the judge awarded only $1 involved circumstances that are distinct from the circumstances here. Notably, the court still determined the reasonable rates for the lodestar of $250 an hour for the senior attorneys, $175 for senior associates, and $150 for junior associates. *Vines*, 2020 WL 3062384, at *4. However, the judge reduced the hours due to, among other reasons, overstaffing, micro-managing associates, reading filing by co-counsel, too much time spent reviewing consent forms, double billing, unclear billing, too many calls with clients, and it being a simple case that did not require so many lawyers. *Id.* at 4–8.  The judge also determined that Sanford's firm was "holding out for more fees" by "hanging over Defendant's head the threat of the fees that <u>might</u> be incurred if it did not pay the unreasonable (and unearned) fee [Sanford's firm] was demanding."  *Id.* at *8.  He concluded that Sanford's firm "essentially extorted the higher fees from Defendant."  *Id.*  There are no allegations akin to the practices the judge in *Vines* deemed merited an attorneys' fee award of only $1.

surveyed had an hourly rate of more than $500 an hour, and 2.4% had an hourly rate of $451 to $500.  *Id.*

Certainly, Sanford has significant experience in FLSA cases as demonstrated by the qualifications outlined in his declaration as well as a quick review of Westlaw.  However, this case was not complex and does not warrant the rate that the top attorneys in Houston working on complex cases receive.  That being said, Sanford's extensive experience merits more than the median rate that employment attorneys in Houston receive.  The court finds, taking into account the various rates noted above, that $400 an hour is a reasonable rate for Sanford for his work in this case.  That is $115 an hour more than the median rate for employment attorneys and above the median rate for attorneys working in firms the size of Sanford's.  *Cf. Villegas v. Regions Bank*, No. H-11-904, 2013 WL 76719, at *3 (S.D. Tex. Jan. 4, 2013) (Rosenthal, J.) (finding a rate of $450 per hour in an FLSA case "consistent with the prevailing Houston market rate for attorneys with comparable experience").

Notwithstanding Stewart's contentions otherwise, with the exception of perhaps the law clerk, the other attorneys staffed on this case for which Sanford seeks reimbursement seem to be very qualified and Stiritz, Kinney, and McEntire are seasoned attorneys.  The court finds that $350 an hour for Stiritz and $300 per hour for Kinney and McEntire are reasonable rates.  Sheffield requests $300 per hour for Rauls, who has seven years of experience.  The court finds that $285 an hour, which is the median rate for labor and employment attorneys and above the median rate for attorneys of Rauls's experience level, is reasonable.  The requested rate for Matlock, who is less experienced, of $225 is reasonable.  Additionally, $125 per hour for the paralegal and $90 per hour for the unnamed law clerk are both reasonable rates.  Stewart takes issue with having no

9

background on the law clerk, but the court does not need background on the individual to determine that paying $90 an hour is reasonable.

## B.    Hours

Sheffield's counsel, Sanford, reduced the number of attorneys for whom he billed and reduced the hours expended in the fee request. Dkt. 48 & Ex. 1 (Sanford's Dec.). Sanford reduced his time by 39.14%, Kinney's by 27.5%, McEntire's by 4.22%, Rauls's by 4.35%, Stiritz's by 7.41%, the paralegals' by 12.12%, and the law clerks' by 19.79%, resulting in an overall reduction for these billers of 18.02%. Dkt. 48, Ex. 1. The specific tasks for which he reduced hours include a 40.91% reduction in hours billed for in-house conferences and a 38.26% reduction in case management hours. *Id.* Sheffield contends that Sanford exercised billing judgment in calculating the lodestar, reviewing records of hours worked, and writing off entries for time spent on tasks that reasonably could be viewed as unproductive, excessive, or redundant. *Id.*

Stewart, noting that counsel must use billing judgment to exclude excessive hours from a fee request, points out that courts in other cases have faulted Sanford for spending three hours on a form complaint, and he is billing 4.6 hours on the complaint in this case. Dkt. 51 (citing *Jones v. RK Enters. of Blytheville, Inc.*, No. 3:13-CV-00252-BRW, 2016 WL 1091094 (E.D. Ark. Mar. 21, 2016) (finding that spending three hours to tailoring a form complaint is too much)). Additionally, it acknowledges that Sanford reduced the time for conferences, but argues that fifteen plus hours is still unreasonable. *Id.* (citing *Tubby v. Allen*, No. 6:16cv972, 2019 WL 4565072 (E.D. Tex. Sep. 3, 2019)). Stewart also points out that time entries on March 25, April 29, May 7, and July 23 are duplicative as multiple attorneys billed for the same phone or case status conferences. *Id.* Stewart additionally takes issue with counsel billing over an hour to amend an

unopposed scheduling order and over fifteen hours on the conditional certification motion that was denied by the court.  *Id.*

Sheffield replies that his attorneys successfully obtained a conditionally certified class, disseminated notice, managed all incoming consents, and ultimately reached a satisfactory result for the plaintiff and all opt-ins.  Dkt. 53.  With regard to the pleading, Sheffield notes that his counsel in addition to drafting or editing the pleading, had to ensure the accuracy of the pleading prior to filing, research to ensure the proper defendant was named, and examine pay stubs to ensure the claims were suitable for litigation.  *Id.*  With regard to billing for in-house communication, Sheffield points out that counsel has already reduced the amount by 40% and the suggestion that counsel be paid nothing at all for communicating with co-counsel is without merit.  *Id.*  Sheffield also notes, with regard to the initial motion for conditional certification, that other courts have granted similar motions and he had no way of knowing this court would not do so.  *Id.*

The court finds that Sheffield's counsel has exercised proper billing judgment in submitting the hours request.  The court believes the 4.6 hours billed for the complaint, the hour to amend the scheduling order, and the approximately fifteen hours spent on the first motion for conditional certification were reasonable.  While a quick review of Westlaw would have revealed this court's requirements for conditional certification (before the recent clarification on standards by the Fifth Circuit), the work on the first motion was not pointless because much of the work on the first motion for conditional certification was used for the second motion, which was successful. Additionally, the court has reviewed the allegedly overly duplicative time entries and does not think they are unreasonable.  The March 25, April 29, May 7, and July 23 time entries that Stewart contends were duplicative because multiple attorneys billed for the same phone or case status conferences actually each involved only two attorneys who each billed for one tenth (0.1) of an

11

hour.  *See* Dkt. 48-3.  This is not an unreasonable amount of time.  Sanford already reduced the amount billed for in-house communication by 40.91%, and the court, after viewing the timesheets and Sanford's declaration, finds that Sanford exercised appropriate billing judgment with this deduction and that the remaining hours submitted are reasonable.

C.       **Calculating the Lodestar**

The lodestar is calculated by multiplying the reasonable rates by the reasonable hours that each attorney spent on this case.  The following chart demonstrates the outcome of these calculations.  The total amount of fees after calculating the lodestar is $38,960.50.

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Josh Sanford | $450 | 19.9 | $8955 |
| Anna Stiritz | $350 | 2.5 | $875 |
| Vanessa Kinney | $300 | 2.9 | $870 |
| Meredith McEntire | $300 | 79.4 | $23,820 |
| Steve Rauls | $285 | 4.4 | $1254 |
| Rebecca Matlock | $225 | 1.7 | $382.50 |
| Paralegal | $125 | 5.8 | $725 |
| Law Clerk | $90 | 23.1 | $2079 |
|  |  | **Total (Lodestar):** | $38,960.50 |

D.       **Adjustment Due to *Johnson* Factors**

The court must now determine whether the lodestar amount should be modified after considering the *Johnson* factors.  However, the U.S. Supreme Court has noted that "'the lodestar figure includes most, if not all, of the relevant factors constituting a "reasonable" attorney's fee,'"

12

and "an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S. Ct. 1662 (2010) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566, 106 S. Ct. 3088 (1986)).  However, in the Fifth Circuit, the district court must "explain how each of the *Johnson* factors affects its award," though this explanation "'need not be meticulously detailed.'"  *In re High Sulfur Content Gasoline Prods. Liability Litig.*, 517 F.3d 220, 228 (5th Cir. 2008) (quoting *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 823 (5th Cir. 1996)); *see also Torres v. SGE Mgmt., L.L.C.*, 945 F.3d 347, 354–55 (5th Cir. 2019) (finding that a record not "clearly reflect[ing] that the district judge utilized the *Johnson* framework" was in error due to *High Sulfur*'s requirements and remanding so that the district court could "'do it by the book'").

The factors set forth in *Johnson* are as follows:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the political "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Torres*, 945 F.3d at 349 n.1 (listing the *Johnson* factors).  The court addresses each of these factors *in seriatim*.

(1) The court considered the time and labor involved when determining the reasonable hours expended for the lodestar.

(2) The court considered the novelty and difficulty of questions when determining a reasonable rate for the lodestar.  This case was not novel, and the difficultly was minimal in relation to any other FLSA collective action.

(3) The court considered the skill requisite to perform the legal service properly when it considered the reasonable rate and reasonable number of hours for each attorney.  While certainly if

attorneys who were too skilled were performing work for which their level of expertise were not necessary and a lower paid attorney should have been performing that work, an adjustment may be justified.  But here, Sanford's declaration and the billing spreadsheets demonstrate that attorneys at the appropriate levels performed the tasks necessary.

(4) The time spent on this case only precluded the attorneys who were working on it from working on other cases during the same hours.  They are being compensated for that time under the lodestar, so the lodestar rate does not need to be adjusted for the fourth factor.

(5) The court considered the customary fee when it calculated the lodestar as is evidence by the discussion above.

(6) Here, the fee is contingent, which is "helpful in demonstrating the attorney's fee expectations when he accepted the case."  *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 723, 107 S. Ct. 3078 (1987).  Therefore, "[a]t most, . . . *Johnson* suggests that the nature of the fee contract between a client and his attorney should be taken into account when determining the reasonableness of a fee award."  *Id.*  The court has taken it into account and finds that no adjustment of the lodestar is necessary under this factor.

(7) The parties have not indicated that any time limitations imposed by the client impacted the fees.  Stewart does mention that there were times during which this case sat idle and that "[l]ack of diligence has been the hallmark of Plaintiffs' conduct throughout the handling of this case" (Dkt. 51), but much of the idle time related to the pandemic or the normal course of litigation and is not indicative of any failure to act on the part of Sheffield's counsel.  The court finds that this factor does not impact the lodestar.

(8) The court took into account the degree of success when it determined reasonable attorneys' fees and hours.  Sheffield's counsel was not successful in its first attempt to obtain conditional certification, but the court does not believe the work on that attempt was useless since they were able to use most of the same research and briefing in the second motion.  While Stewart notes that the settlement came "nowhere close to approximating the over 20 hours of claimed overtime premium pay per week plus liquidated damages across a three-year period" (Dkt. 51), the outcome generally was successful for Sheffield and the opt-in plaintiffs and does not warrant a deduction in the lodestar.

(9) The court took into account the experience, reputation, and ability of the attorneys when determining the lodestar rates.

(10) The tenth factor is the political "undesirability" of this case.  It is not relevant here, as this was a standard FLSA collective action.

(11) There is no indication that Sheffield and his counsel had a relationship prior to the initiation of this lawsuit; the eleventh factor does not have any impact on the lodestar in this case.

(12) The court considered awards in similar cases when determining the lodestar.  The parties point to no similar cases in which the lodestar was adjusted.

14

In sum, none of the *Johnson* factors change the lodestar in this case.  Accordingly, Sheffield's motion for attorneys' fees is **GRANTED IN PART**.  The court **AWARDS** $38,960.50 in fees in accordance with the lodestar calculation above.

**E.     Costs**

Sheffield seeks $495 in costs pursuant to 29 U.S.C. § 216(b), Federal Rule of Civil Procedure 54(d), and 28 U.S.C. § 1920.  Dkt. 48.  This amount represents a $400 filing fee and a $95 service of process fee.  *Id.*  Stewart does not object to this request.  *See* Dkt. 51.  Accordingly, the motion for costs is **GRANTED AS UNOPPOSED**.

### IV.  CONCLUSION

Sheffield's motion for attorneys' fees and costs is **GRANTED IN PART**, and Sheffield is **AWARDED** $38,960.50 in attorneys' fees and $495 in costs.  The settlement agreement is **APPROVED**.

Signed at Houston, Texas on March 10, 2021.

Gray H. Miller
Senior United States District Judge